IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL M.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, Commissioner of Social Security,<br><br>　　　　　　Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 4:24-cv-00021-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

Before the Court is Plaintiff Michael M.'s appeal from the decision of the Social Security Administration denying his application for supplemental security income benefits.[1] This matter is referred to the undersigned from District Judge Ann Marie McIff Allen pursuant to 28 U.S.C. § 636(b)(1)(B).[2] The Court recommends that the Commissioner's decision be affirmed.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[3] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[4] The ALJ is required to

---

[1] Docket No. 10.

[2] Docket No. 7.

[3] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[4] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[5] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[6] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[7] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[8]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On May 19, 2021, Plaintiff filed an application for supplemental security income, alleging disability beginning July 1, 2020, due to post-traumatic stress disorder ("PTSD"), depression, anxiety, attention deficit hyperactivity disorder ("ADHD"), and hypertension.[9] Plaintiff later amended the alleged onset date to May 19, 2021.[10] The claims were denied initially and on reconsideration.[11] Plaintiff then requested a hearing before an ALJ.[12] A hearing was held on January 3, 2023.[13] On January 25, 2023, the ALJ found that Plaintiff was not

---

[5] *Id.* at 1009–10.

[6] *Richardson*, 402 U.S. at 390.

[7] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[8] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[9] R. at 238–46, 264.

[10] *Id.* at 18.

[11] *Id.* at 102–23, 138–39.

[12] *Id.* at 140–42.

[13] *Id.* at 46–76.

disabled.[14] The Appeals Council denied review on December 18, 2023,[15] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[16]

On February 15, 2024, Plaintiff filed his complaint in this case.[17] The Commissioner filed an answer and the administrative record on April 15, 2024.[18] Plaintiff filed his Opening Brief on May 9, 2024.[19] The Commissioner's Answer Brief was filed on July 24, 2024.[20] Plaintiff filed his Reply Brief on August 7, 2024.[21]

B.   MEDICAL EVIDENCE

In 2020, Plaintiff was injured while at work.[22] Plaintiff contracted necrotizing fasciitis, which resulted in his hospitalization for about 10 days.[23] Thereafter, Plaintiff had difficulty returning to work due to PTSD, anxiety, and other mental health issues, and he ultimately lost his job.[24]

Plaintiff has treated his mental health issues with medication and some counseling. The record evidence presents a mixed picture. During some visits, Plaintiff was adequately groomed,

---

[14] *Id.* at 15–45.
[15] *Id.* at 1–7.
[16] 20 C.F.R. §§ 416.1481, 422.210(a).
[17] Docket No. 1.
[18] Docket No. 8.
[19] Docket No. 10.
[20] Docket No. 16.
[21] Docket No. 17.
[22] R. at 55.
[23] *Id.* at 360.
[24] *Id.* at 55–56.

3

pleasant and cooperative, and the exam findings were otherwise unremarkable.[25] In others, Plaintiff complained of increasing symptoms and reduced effectiveness of his medication.[26]

C.   HEARING TESTIMONY

At the hearing, Plaintiff testified that he worked for Washington City as a park attendant until he suffered an injury to his foot while on the job.[27] The injury became infected, sepsis set in, and a flesh-eating skin disorder spread up his leg.[28] Although doctors were able to cure the infection, Plaintiff retained scar tissue and occasionally suffers from swelling in the leg.[29] Plaintiff testified that he drew workers' compensation benefits as a result of the injury until about April 2020.[30] After completing rehab, Plaintiff began suffering from severe anxiety and mental health issues that made it difficult for him to return to work.[31] He testified he was able to work for three or four months until he began having attendance issues due to increased irritability (especially near the accident site), severe panic attacks, and high levels of anxiety.[32] Plaintiff takes medication and attends therapy to manage his severe anxiety; he testified that these resources help him function "on a rudimentary basis."[33] Since filing for disability benefits, Plaintiff allegedly suffers from two to four panic attacks per week that last between six and seven

---

[25] *Id.* at 340, 345, 347, 363, 371, 375–77, 379–81, 383, 394, 402, 413, 421–22, 432.
[26] *Id.* at 338, 345, 349, 357, 403–04, 430, 444–45.
[27] *Id.* at 54–55.
[28] *Id.* at 61.
[29] *Id.* at 61–62.
[30] *Id.* at 55.
[31] *Id.*
[32] *Id.* at 56, 58.
[33] *Id.* at 59.

hours each.[34] Plaintiff testified that he sometimes suffers with insomnia,[35] and takes medication to manage his hypertension.[36]

Plaintiff testified he did not look for work after being let go by the City.[37] Plaintiff has resided with his parents for some time.[38] He testified that he spends most of his time in his bedroom with the door closed and does not associate with anyone outside his immediate family.[39] Even though Plaintiff can cook for himself occasionally and do his own laundry, he does not perform regular chores around the home.[40] He testified that he leaves the house approximately once a week, bathes himself once a week, and wears clothes (other than pajamas) about once or twice a week.[41]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 19, 2021, the application date.[42] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, PTSD, depression, anxiety, and

---

[34] *Id*. at 64.
[35] *Id*. at 60.
[36] *Id*.
[37] *Id*. at 56–57.
[38] *Id*. at 57.
[39] *Id*. at 65–66.
[40] *Id*. at 66–67.
[41] *Id*. at 67–68.
[42] *Id*. at 21.

ADHD.[43] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[44] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain restrictions.[45] At step four, the ALJ concluded that Plaintiff had past relevant work as a park worker, equipment operator, and computer technician.[46] The ALJ concluded that Plaintiff was unable to perform past relevant work as actually or generally performed.[47] At step five, the ALJ considered Plaintiff's age (closely approaching advanced age), education (at least high school education), work experience, and RFC, and he determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and, therefore, he was not disabled.[48]

E.     APPEALS COUNCIL DECISION

Plaintiff submitted additional medical records for the Appeals Council to consider when reviewing the ALJ's decision. These included records from Psychiatry & Counseling – St. George Psychiatry dated July 21, 2022, through December 6, 2022, and a medical source statement from Laura Romer, M.D., dated December 6, 2022.[49] The appeals council determined that the additional medical records were not new and were just a copy of a previously admitted exhibit.[50] The appeals council found that the medical source statement from Dr. Romer did not

---

[43] *Id.* at 21–23.
[44] *Id.* at 23–26.
[45] *Id*. at 26–40.
[46] *Id.* at 40.
[47] *Id*.
[48] *Id*. at 40–42.
[49] *Id*. at 2, 77–78.
[50] *Id*. at 2.

show a reasonable probability that it would change the outcome of the ALJ's decision, so it was not exhibited as evidence.[51]

## III. DISCUSSION

Plaintiff argues that (1) the ALJ erred by failing to properly evaluate the severity of Plaintiff's mental impairments at steps two and three, and (2) the Appeals Council erred in its consideration of the evidence submitted after the ALJ's decision.

### A. MENTAL IMPAIRMENTS

Plaintiff first argues that the ALJ erred in evaluating the severity of his mental impairments at steps two and three. At steps two and three, the regulations prescribe a "special technique" to determine severity or non-severity of mental impairments.[52] First, the ALJ establishes whether the claimant has a medically determinable mental impairment. Second, the ALJ rates the functional limitation resulting from such impairment in four broad functional areas.[53]

Here, there is no dispute that the ALJ applied the special technique required by the regulations. At step two, the ALJ found that Plaintiff had a number of severe mental impairments, including PTSD, depression, anxiety, and ADHD.[54] At step three, the ALJ found

---

[51] *Id.*

[52] *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013); 20 C.F.R. §§ 404.1520a, 416.920a.

[53] The regulations identify four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). These are rated on a "five-point scale: None, mild, moderate, marked, and extreme." *Id.* §§ 404.1520a(c)(4); 416.920a(c)(4).

[54] R. at 21–23.

that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations with regard to concentrating, persisting or maintaining pace; and mild limitations in adapting or managing oneself.[55] In reaching these conclusions, the ALJ engaged in an exhaustive review of the evidence in the record, including evidence that could support a finding of greater limitations. The ALJ acknowledged that "on some examinations, [Plaintiff] has had some abnormal findings," but found that "overall, the physical, neurological and psychiatric and mental status examination findings were generally within normal limits and unremarkable with follow-up visits for medication refills."[56] As such, the ALJ found that the limitations called for in Plaintiff's RFC adequately accommodated Plaintiff's mental limitations.[57] These limitations included limiting Plaintiff "to performing simple 1-4 step, routine, repetitive tasks where such work is performed in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors and with the general public."[58]

Plaintiff argues that the ALJ's analysis was flawed. In so doing, he points to evidence that could support additional limitations and asserts that the ALJ either failed to acknowledge this evidence or he mischaracterized it. In doing so, Plaintiff essentially asks the Court to reweigh the evidence to conclude that the ALJ should have imposed greater limitations. This,

---

[55] *Id.* at 23–26.

[56] *Id.* at 35.

[57] *Id.*

[58] *Id.* at 26–27.

however, is not the Court's role. Plaintiff is correct that there is evidence that could support additional limitations than those found by the ALJ. The medical records present a complicated picture, showing both improved and worsening symptoms. Ultimately, it was the ALJ's job to determine the appropriate weight to give all the evidence and "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[59] Here, the ALJ's evaluation of Plaintiff's mental impairments was fully supported by substantial evidence and the correct legal standards were applied.

B. POST-HEARING EVIDENTIARY SUBMISSIONS

Plaintiff also argues that the Appeals Council erred in its treatment of evidence submitted after the ALJ issued his decision, specifically the Treating Source Statement of Mental Limitations provided by Plaintiff's treating psychiatrist Dr. Laura Romer.[60] Dr. Romer opined that Plaintiff had a number of moderate or marked limitations, would be absent from work one to two days per month, and would be off task 15% to 20% of the time. The Appeals Council found that this "evidence does not show a reasonable probability that it would change the outcome of the decision."[61]

The Appeals Council will review additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that

---

[59] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

[60] R. at 77–78.

[61] *Id.* at 2.

9

the additional evidence would change the outcome of the decision."[62] In reviewing this decision, the Court must determine whether this new evidence renders the ALJ's decision unsupported by substantial evidence.[63] This requires the Court to "speculate to some extent on how the administrative law judge would have weighed the newly submitted [evidence] if [it] had been available for the original hearing."[64]

The Appeals Council's treatment of Dr. Romer's statement was not erroneous because there is not a reasonable probability that the outcome would have been different. When an ALJ reviews medical opinion evidence, the ALJ is not required to defer to or give any specific weight to them.[65] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.[66] The most important criteria for determining persuasiveness are supportability and consistency.[67]

Here, Dr. Romer's assessment of more extreme limitations than those found by the ALJ is not fully supported by her treatment notes, which the ALJ discussed extensively, and showed both improved and worsening impairments.[68] Nor are they consistent with the other record

---

[62] 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

[63] *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017).

[64] *Vallejo v. Comm'r, SSA*, 762 F. App'x 532, 535 (10th Cir. 2019) (quoting *Riley v. Shalala*, 18 F3d 619, 622 (8th Cir. 1994)).

[65] 20 C.F.R. § 404.1520c(a).

[66] *Id.* § 404.1520c(c).

[67] *Id.* § 404.1520c(a), (b)(2).

[68] R. at 31–34.

evidence, which the ALJ fully considered.[69] This includes the assessment of the state agency psychological consultants, who found that Plaintiff had, at most, mild to moderate limitations in the areas of mental functioning and could do simple work with certain restrictions.[70] The ALJ found these opinions persuasive,[71] and in making this finding the ALJ relied on Dr. Romer's treatment notes.[72] In contrast, the ALJ found more restrictive opinions less persuasive,[73] again relying on Dr. Romer's notes.[74] Given the ALJ's reliance on Dr. Romer's notes to support his evaluation of the medical opinion evidence and his RFC assessment, the Court is confident that the ALJ would have found Dr. Romer's Treating Source Statement less than persuasive and, thus, would not change the ALJ's decision.[75]

## RECOMMENDATION

For these reasons, the undersigned recommends the ALJ's decision be affirmed.

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

---

[69] *Id.* at 23–40.

[70] *Id.* at 105, 108–09, 116, 121–22.

[71] *Id.* at 36–37.

[72] *Id.* at 36.

[73] *Id.* at 37–40.

[74] *Id.* at 38–39.

[75] *See M.H. v. Kijakazi*, No. 21-cv-01797-CNS, 2023 WL 2401063, at *4 (D. Colo. Mar. 8, 2023) (holding that when new evidence is similar to an opinion found unpersuasive by the ALJ, the Appeals Council's decision that there is no reasonable probability it would change the outcome is supported by substantial evidence).

DATED this 27th day of August, 2024.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge